# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRO'S SPORTS BAR & GRILL, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 08 C 6031 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| CITY OF COUNTRY CLUB HILLS, et al, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought by Pro's Sports Bar & Grill, Inc. and its owners, Tharon Bradley, Carla Nelson, and Patricia Nelson (collectively "PSB") against the City of Country Club Hills, Mayor Dwight Welch, and Clerk Debra McIlvain (collectively "the City").[1] The suit seeks a declaratory judgment, injunctive and monetary relief related to a liquor license that was issued to PSB. The issue is whether the time limitations of PSB's current license (ceasing sales at 11:30 p.m. on weekdays and 12:30 a.m. on weekends) are enforceable, or whether the general time limitations for liquor licenses appearing in the Municipal Code (2:00 a.m. on weekdays and 3:00 a.m. on weekends) should apply. PSB contends that when its liquor license was granted by ordinance of the City Council, the Council never voted on an amendment to limit the hours of sale, resulting in a license with the default sales limitations found in the Municipal Code, or alternatively, that any vote taken on the amendment was itself improper under Illinois' open meeting laws. PSB argues that the City's enforcement of the limited hours violates its procedural due process and equal protection rights. PSB has sought a preliminary injunction, and a hearing was held on December 8 and 9, 2008.

---

[1] McIlvain has not yet appeared in the case, having only recently been added via an amended complaint.

# I. BACKGROUND

To obtain a liquor license in Country Club Hills, a business must apply and be approved, and then the City Council must pass an ordinance granting that particular business a liquor license. PSB satisfied all the application requirements for its liquor license, and the Council considered an ordinance to grant PSB a license on November 26, 2007. This case largely focuses on a narrow technical issue: whether the City Council voted to grant PSB a liquor license without unique limitations, or whether it voted to grant a liquor license with restricted hours of service. The Council definitely adopted *an* ordinance that granted PSB a liquor license, but the parties dispute whether the ordinance authorized the sale of alcohol until 2:00 a.m. on weekdays and 3:00 a.m. on weekends,[2] as is generally true for liquor licenses as stated at Section 13.3.06 of the Country Club Hills' Municipal Code, or whether PSB was granted a license limited to the hours of 11:00 p.m. on weekdays, and 12:30 a.m. on weekends.

The November 26, 2007 City Council meeting was videotaped, and a review of that recording establishes the following chronology of events.[3] Thirty-nine minutes and fifty-two seconds into the meeting, the Council turned to the "Economic Development" portion of its agenda, the only item being whether to pass an ordinance which would grant PSB a liquor license. Alderman Tyrone Hutson was granted the floor, but rather than introduce the proposed ordinance to grant a license to PSB, Hutson began explaining to the Council that he wished to "amend the ordinance, and place a time frame on the liquor license." Nov. 26, 2007 City Council Video

---

[2] In this context, "weekends" refers to Friday and Saturday nights.

[3] The parties did not provide a transcript of the November 26, 2007 City Council meeting. The following times, quotations, and summaries come directly from a DVD-recording that was provided by the parties to the court. The court will cite to this video in a "Video at [MM:SS]" format, with the minutes and seconds coming from the time-stamp of the video as viewed in Windows Media Player.

("Video") at 40:13. In particular, Hutson wished to limit the hours of alcohol sales to 11:00 p.m. on weekdays and 12:30 a.m. on weekends.

Mayor Welch directed Hutson to introduce the amendment via a motion, which Hutson did. Video at 40:40. After receiving a second, Hutson called for a vote, but Welch stated that discussion on the amendment must occur first. Video at 40:53. At this point, only an amendment to change the wording of the proposed liquor license ordinance was at issue—the actual ordinance itself had not yet been introduced.

After Welch called for discussion, Welch spoke for about three minutes about the liquor licensing process generally. He explained first that a liquor license does not run with the land, but rather terminates upon the sale of a business. Video at 40:55. Welch then stated that "this item has been going back and forth for a little while" because "there was no clear consensus on it." Video at 41:50.[4] Welch then observed that PSB is a "spot zone," meaning it is in an area zoned for commercial use but is surrounded by residential zoning. Video at 42:20. Welch then stated that he "[does] not have a problem" with the hours proposed by Hutson. Video at 42:38. Welch next emphasized that PSB's license, like all other licenses, would last only until May 1st of the following year, at which time it would need to be renewed. Video at 42:50. Welch then explained the general need for this annual renewal, and the cost of the license. He indicated that he traditionally defers on decisions related to liquor licenses to the aldermen from the particular ward where the business is to be located, and he asked "Tom" if he had "anything to say." Video at 43:57.[5] Tom said the

---

[4] The terms "this item" and "it" are ambiguous, but Welch appears to be referring to the ability of PSB to maintain the liquor license held by the former restaurant that PSB was replacing.

[5] "Tom" is not identified in the video, but is presumably the second alderman for Ward 3, where PSB is located. Hutson is the other alderman from Ward 3.

3

proposed amended hours were fine with him, and that if there were a problem, the police would take care of it. Video at 43:58–44:08.

Another alderman—who at the preliminary injunction hearing was identified as Alderman Vincent Lockett—then inquired about moving the weekday time from 11:00 p.m. to 11:30 p.m. so that patrons of PSB would not have to leave before games such as Monday Night Football had ended. Video at 44:10. Welch responded that just because the bar had to stop serving liquor did not mean that the patrons had to leave—it meant only that they had to stop consuming alcohol.[6] Welch then said—seemingly to someone in the crowd—"you guys good with that? All right. All right. Let's move on." Video at 47:10.

No vote on the amendment was ever taken. Instead, after Welch said to "move on," Hutson did just that—he proceeded to introduce, by motion, the original ordinance. Video at 47:21. Hutson first asked Clerk McIlvain for the ordinance number, then stated:

> This ordinance number, 8-1807,[7] is an ordinance providing for the granting of a Class A liquor license to [PSB], which is located at 18601 S. Cicero Avenue, Pursuant to Chapter 13 of the City of Country Club Hills Municipal Code.

Video at 47:21–47:41. The motion received a second, and Welch called for "discussion." Video at 47:42. At this point, an unknown alderman asked what was being considered—the original ordinance, as written, or the ordinance with the amended time changes. Video at 47:42. Welch responded,

---

[6] The Municipal Code appears to speak to the contrary. Municipal Code § 13.3.06 ("During such prohibited hours of sale, every location, place, premises where alcoholic liquor may be sold at retail shall be kept closed, and no person other than the licensee or any employee or member of the immediate family of the licensee shall be permitted to remain therein.").

[7] This appears to have been a misstatement—Hutson had just stated the ordinance was "0-1807," but next introduced it as "8-1807."

4

> This is amended, but we are going to have to put this, I talked to our city attorney, we'll have to put this into, ah, a formal ordinance at the next council meeting, but I'm going to give them permission to go ahead and proceed, as the Liquor Commissioner,[8] based on the Council's action tonight.

Video at 47:45–48:00. Welch then immediately proceeded to a roll call, and all ten aldermen voted in favor. *Id.* The Council then moved on to other business.

The minutes from the Council's November 26, 2007 meeting regarding this issue are, unsurprisingly, abbreviated. The minutes state the following:

> Alderman Hutson moved for Council approval of Ordinance No. 0-18-07, an Ordinance Providing for the Granting of a Class "A" Liquor License to [PSB], 18601 S. Cicero Avenue, Pursuant to Chapter 13 of the City of Country Club Hills Municipal Code, Second — Alderman Watts. Discussion — Discussion ensured regarding proposed hours of sale of liquor. It was requested that the hours in the ordinance be amended to Sunday through Thursday liquor sales until 11 pm and Friday and Saturday until 12:30 am. The roll call vote with amended hours is as follows:
>
> ROLL CALL VOTE: 10 Ayes:    Aldermen Watts, Hutson, Lee, Battie[,] Comein, Singletonm, Lockett, Martin, Williams and Ford.
>
> 0 Nays
>
> 0 Absent[]
>
> Motion Declared Carried and Hereby Made a Part of the Original Journal of Proceedings this date.

Nov. 26, 2007 City of Country Club Hills City Council Minutes at 4.

The Council next met at an unknown date in December, 2007, but did not revisit the issue of PSB's liquor license. An unrestricted Class A[9] license was issued to PSB, and was obtained from

---

[8] Mayor Welch serves as the Liquor Commissioner for the city.

[9] Country Club Hills offers two relevant liquor licenses. Class A licenses are granted to restaurants. Class B licenses are granted to bars. PSB was originally granted a Class A, which was subsequently changed to a Class B. PSB does not object to this change of classification, and the general hour requirements listed at Section 13.3.06 of the Municipal Code is indifferent to the class

5

McIlvain by Bradley on January 4, 2008. However, a new "Class A-1" liquor license was "reissued"[10] on January 8, 2008, and was signed by Clerk McIlvain and Mayor Welch. The Class A-1 license did not provide any time limitations to the service of alcohol. The Municipal Code does not have any provision for a Class A-1 license. When questioned about this at the preliminary injunction hearing, McIlvain testified that she was uncertain why she "reissued" this license to PSB, but speculated that she did so in anticipation of an ordinance that was in committee, which would have created a Class A-1 license. No such ordinance was ever adopted, and the Class A-1 license issued to PSB was never voted on by the City Council. However, PSB claims that it was subsequently handed by a police officer the first page of a draft ordinance that purports to establish a Class A-1 license, and which limits Class A-1 licensees to the hours discussed at the November 26, 2007 city council meeting. Although the draft ordinance was never adopted by the Council, PSB alleges that the police began enforcing these time limitations, resulting in several citations, arrests of management, and frequent visits by the police to PSB at or shortly before closing time. Bradley testified that this resulted in lost business and revenues, noting that he often had to refund fees to those who had booked private parties that were terminated early because of the police, and that he had noted that some of PSB's patrons moved on to the other bars in the city that were allowed to be open later after PSB was forced to close.

In March, 2008, the Council entertained a motion to *extend* PSB's hours to those of every other bar in town—namely, 2:00 a.m. on weekdays and 3:00 a.m. on weekends. That ordinance did not pass, receiving five votes in support and five against.

---

of the particular license.

[10] The verb "reissued" appears on the Class A-1 license.

PSB applied for a new license prior to May 1st, 2008, as it and all licensees are required to do. PSB applied this time for a Class B license, pursuant to a conversation it and other bar owners had with Welch in March, at which time Welch stated that bar owners would be required to obtain a Class B license if more than 60% of their revenue came from liquor sales. However, when PSB received its new Class B license, it stated the following limitation:

> This Liquor License is hereby Granted to [PSB] to Sell/Dispense Liquor in the City of Country Club Hills, *until 11:30 pm Sunday through Thursday, and until 12:30 pm[11] Friday and Saturday* . . .

PSB Class B License (Apr. 29, 2008) (emphasis added). These new hours were never voted on by the City Council. Nor are they the hours discussed at the November 26, 2007 meeting. At the preliminary injunction hearing, it was established that when Clerk McIlvain receives an application for a new liquor license, she first confirms that the establishment's dram shop insurance is still valid, and then issues a new one-year license with the same terms and conditions that the establishment's previous license had contained.

## II. ANALYSIS

To prevail, PSB must demonstrate: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (citation omitted). If so, then the court must balance the irreparable harm that Defendants will suffer if preliminary relief is granted against the irreparable harm PSB will suffer if relief is denied. *Id.* (citation omitted). The "public interest," that is, the interest of non-parties, must also be considered. *Id.* These factors are then weighed, with the court "sitting as would a chancellor in equity." *Id.* (quoting *Abbott Labs. v.*

---

[11] The reference to 12:30 *pm* is assumed to be a typographical error; all parties agree that to the extent this was a legitimate limitation, 12:30 *am* was intended.

*Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). The court is to utilize a sliding scale: "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.* The standard does not involve a mathematical formula, but "is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* (quoting *Abbott Labs.*, 971 F.2d at 12).

**A.     Likelihood of Success on the Merits**

Plaintiffs have presented claims for relief under both the due process and equal protection clauses of the Fourteenth Amendment. These will be considered in turn.

*1.     Due Process*

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. 14 § 1. This provision applies with equal force to municipalities as to the fifty states. *See Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278 (1913). Due process claims require a two-step approach. The first question is whether a plaintiff has been deprived of a protected liberty or property interest. If so, the court must consider whether the deprivation occurred without due process. *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003).

a.     Deprivation of property interest

Before determining if PSB was deprived of a property interest, the precise property interest at issue must be established. Neither party disputes that an Illinois liquor license is a form of property within the meaning of the due process clause of the Fourteenth Amendment. *See Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (citing *Reed v. Village of Shorewood*, 704 F.2d 943, 948–49 (7th Cir. 1983). Recipients of liquor licenses have an interest not only in the

license itself, but also in having the same license *renewed* annually—a municipality's failure to renew a license is analogous to a municipality's revoking a license, both of which require cause and a hearing. *Id.* at 618; *see also* 235 Ill. Comp. Stat. 5/7-1 to 7-14 (revocation process). The question remains, however, as to what type of liquor license PSB was granted at the November 26, 2007 City Council meeting.

The parties interpret the video, and the Council's actions, differently. Defendants take the position that the Council adopted the amended ordinance (*i.e.*, with the time restrictions) subject only to clerical revisions that would have to be made to the ordinance to reflect the amendment. Plaintiffs respond that the only ordinance adopted was an ordinance granting a general Class A liquor license, and although Mayor Welch stated that the ordinance would likely be amended at the next meeting, the Council never did so, leaving the original ordinance intact.

As detailed in the background section, when the Council reached the ordinance on its agenda, Alderman Hutson introduced a motion to *amend* the ordinance, but did not immediately introduce the ordinance itself. The amendment was discussed for about seven minutes, at which point Mayor Welch said, "let's move on." No vote on the amendment was taken.

Hutson proceeded to introduce the original ordinance as drafted, without any amendment. An alderman asked the mayor, what are we voting on? Welch responded, "This is amended, but we are going to have to put this, . . . we'll have to put this into . . . a formal ordinance at the next council meeting," Video at 47:45–48:00. The Council then voted 10 to 0 in favor.

Welch's comment adds confusion to what happened, in significant part because it is illogical. If the ordinance was already amended and the Council was voting on the amended version, there would be no need for the Council to "put this into . . . a formal ordinance at the next council meeting." Only if the council were voting on the unamended version would the second part of

9

Welch's sentence make sense—the Council would vote next time on whether to limit the hours.[12] Regardless, to the extent that Welch stated that the ordinance had *already* been amended, this was clearly an erroneous statement. The amendment was considered for about seven minutes, but was never put to a vote and was never approved by the Council. Rather, Welch said "let's move on," and they did just that—Hutson introduced a new motion (the original ordinance), and it was approved, ten to zero.

Defendants argue that this plain reading of the meeting events cannot be so, for in their view the intention of the Council was absolutely clear: every member of the council wanted to limit PSB's hours. The court rejects this approach for two reasons. First, it is not clear that every council member preferred the time limitations. Hutson clearly supported the limitations as he introduced the motion to amend. Welch said he "did not have a problem" with the limitations, and that he typically defers to the aldermen of that ward (*i.e.*, Hutson and the unidentified alderman named "Tom"), so one may presume that Welch supported this as well. Alderman Tom, the other alderman from Ward 3, also said that these times were fine with him. In contrast, Alderman Lockett's comments about the need to extend the hours until at least 11:30 p.m. is ambiguous, but suggests that he had at least some reservations about the amended hours. The remaining seven aldermen remained silent, neither speaking for nor against the amendment. Given that Welch informed the Council immediately before the roll call that the issue of time limitations would be taken up at the next council meeting, it is reasonable to assume that while all ten aldermen supported giving PSB

---

[12] Defendants argue that Welch was stating only that the Clerk would merely have to amend the text ordinance so that its language would reflect the time limitations, but that no further action from the Council would be required. This is not what Welch stated; to the contrary, he stated that the ordinance would have to be considered "at the next council meeting."

10

*a* license, they were not necessarily in agreement that the hours for that license should be limited and, if so, to what extent.

But more importantly, the *intent* of the legislative body matters only in situations where the text of the legislation is ambiguous. If the legislation is clear, then the court has no ability to look behind its clear wording to attempt to divine the legislators' intent. *See, e.g.*, *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). The text of the ordinance adopted by the Council is clear—it specifically refers to the license as a Class A license, and section 13.3.06 of the Country Club Hills' Municipal Code provides that such licenses are valid until 2:00 a.m. on weekdays and 3:00 a.m. on weekends. The language of the ordinance adopted by the council does not suggest anything contrary.

From the above, the court concludes that the Council granted PSB an unrestricted Class A liquor license on November 26, 2007.

The next question is whether PSB has been deprived of this interest. There is no dispute that the City is acting as though PSB is authorized to sell liquor only until 11:30 p.m. during the week and 12:30 a.m. on weekends. This is 2.5 hours less than the Council authorized, and is a deprivation. Furthermore, the deprivation is more than *de minimis*, as it must be to state a violation of due process. *See Head v. Chi. Sch. Reform Bd. of Tr.*, 225 F.3d 794, 803 (7th Cir. 2000). An unrestricted license permits sale of alcohol for 17 hours a day on weekdays, and 18 hours a day on weekends. *See* Municipal Code § 13.3.06. Two and a half hours constitutes 15% of the weekday sales period, and 14% of the weekend sales period. Perhaps more importantly, the need to close early is costing PSB revenue and business since PSB cannot remain open as late as its patrons desire

11

and its competition can offer; this limitation is likely more severe than if PSB's opening period were delayed by 2.5 hours.

### b. Requirements of due process

When a party is deprived of a property interest, a court must typically undertake a three-factor balancing test, as established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what type of procedure would be sufficient. The *Eldridge* test inquires into factors such as (1) the nature of the private interest at stake; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the value of additional or substitute procedural safeguards; and (3) the interest of the Government in the property deprivation. *Id.* at 335. However, this test does not need to be considered here, for Illinois has already determined that a pre-deprivation hearing is required to revoke a liquor license. *See* 235 Ill. Comp. Stat. 5/7-1 to 7-14 (revocation process). The Seventh Circuit has ruled that depriving a business of its license without following these procedures is a violation of due process. *Club Misty, Inc.*, 208 F.3d at 621 (striking down referendum process permitting voters to revoke license without any hearing or other process). The facts here are slightly distinguishable since PSB is being deprived of only 2.5 hours of liquor sales per day, as opposed to being stripped of its entire ability to sell alcohol, but PSB has adequately shown that these hours are critical to its ability to operate competitively. The court sees no reason why the balance of factors should be any different in this context—a property interest is nothing but a bundle of sticks, and to the extent that the interest is being impaired in a more than a *de minimis* manner, procedural safeguards must apply.

Based on the record that has been established at this point, PSB has not been afforded any pre-deprivation hearing, as due process would require. To deprive it of its full rights under the ordinance originally passed by the Council is to deny PSB its due process rights.

c. Whether a federal court may resolve this procedural due process issue

The City next argues that even if all of the above were correct, this is not the proper forum for PSB to pursue its remedy. The City's argument stems from Supreme Court precedent starting with *Parratt v. Taylor*, 451 U.S. 527 (1981), where the Court held that certain procedural due process questions are better left to the states to be resolved, and so long as adequate post-deprivation remedies are available, a cause of action under § 1983 is foreclosed. As the Seventh Circuit has explained, "*Parratt* essentially stands for the rule that when pre[-]deprivation hearings are impractical because the actions of the state officers were "random and unauthorized" the state is only responsible for providing post[-]deprivation remedies." *Veterans Legal Def. Fund v. Schwartz ("VLDF")*, 330 F.3d 937, 940 (7th Cir. 2003) (citations omitted). However, this line of cases is inapplicable. The state has already established that individuals such as PSB are entitled to a *pre-deprivation* hearing. *Parratt* applies only where a pre-deprivation hearing has been found to be impractical and unnecessary. *See VLDF*, 330 F.3d at 940 (discussing *Zinermon v. Burch*, 494 U.S. 113 (1990), where suit was allowed to proceed because focus was lack of a pre-deprivation remedy).

At this stage, Plaintiffs must show only *some* likelihood of success on the merits, though the higher its chance of success, the less it needs to show regarding the other preliminary injunction elements. *See Ty, Inc.*, 237 F.3d at 895–96. At this stage, it is unclear what other evidence could exist that would be more probative than the video of the November 26, 2007 hearing. At this stage, PSB has established a strong likelihood of success on its due process claim.

2. *Equal Protection*

PSB also claims that it is being discriminated against as a "class of one," and cites *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). PSB is not a member of any protected class, and thus the rational basis standard of review applies. *Id.*

13

The chance of PSB prevailing on an equal protection claim is weak. For the reasons stated in the previous section, this is not an equal protection case, but rather a due process case, for in this context there was no duly enacted law being discrimininately enforced against PSB. *See id.* Even assuming that an equal protection claim were possible, PSB appears unlikely to prevail. Defendants have pointed to several reasons why limited hours could be reasonable, including complaints from neighbors about noise and parking problems in the neighborhood resulting from PSB patrons parking on the surrounding streets rather than in PSB's parking lot. PSB concedes the latter point was a problem on its opening weekend, but contends in its brief and through the testimony of Bradley that it is no longer a "major issue." PSB disputes that the complaints about noise are valid, but does not dispute that these complaints have been made to the Council.

PSB's arguments miss the point of an equal protection analysis—it is not for this court to determine who is right, but rather to see if "any set of facts reasonably may be conceived to justify" Defendants' actions. *Wroblewski v. City of Washburn*, 965 F.2d 452, 459–60 (7th Cir. 1992). This is a deferential standard of review. Given that the Council has received complaints regarding PSB, this court cannot say that limiting PSB's alcohol distribution hours is an irrational response.

**B.     Adequate Remedy at Law and Irreparable Nature of Harm**

PSB is a year-old business struggling to survive. Though at the hearing Bradley could not be specific about the exact monetary losses PSB was suffering as a result of the restricted hours, he established that some loss was occurring, in the form of (1) refunds for parties that were cancelled or terminated early; (2) lost repeat business for patrons who choose not to return because of the restricted hours; and (3) lost business to other establishments who can operate later into the evening. He also established that PSB is financially troubled and is behind on its mortgage and other payments.

The City criticizes Bradley's inability to ascertain the specific amount of revenue he is losing. If he could pinpoint the precise amount, that almost by definition would be a harm with a legal remedy. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial."). "[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) (citations omitted). Harm is irreparable and a party is without a sufficient legal remedy "where damages would come too late to save the plaintiff's business." *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1018 (7th Cir. 1990) (citations omitted); *see also TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 634 (7th Cir. 2007) (discussing Illinois' "new business" rule prohibiting legal remedy for lost profits if overly speculative). The harm to PSB is irreparable, and PSB lacks an adequate legal remedy absent this injunction.

PSB's irreparable harm must be balanced against that of the City. The City does not raise any irreparable harm arguments, pointing only to the adverse impact that will be felt by PSB's neighbors. This will be addressed in the next section.

**C.  Public Interest**

In evaluating the public interest, a court "should try to 'minimize the costs of being mistaken.'" *Ty, Inc.*, 237 F.3d at 902 (quoting *Abbott Labs.*, 971 F.2d at 12). Regarding the public interest, the City points primarily to the interests of neighbors in not having a bar operate into the "wee-small hours of the morning," and argues that the Court should not involve itself in these quintessentially local issues. Defs.' Resp. to Pls.' Mem. in Supp. of Prelim. Injunc. 9–10 (Doc. No. 22). This argument is persuasive, but only in part, and overlooks the bigger issue that this case presents. All public citizens have an interest in having local governments follow the democratic

15

process, and as the court has indicated above, the City has failed to do so in its efforts to limit PSB's operating hours. To the extent that PSB is a nuisance, the local police are entitled to respond accordingly. Furthermore, there is nothing preventing the community members from invoking the democratic process to address perceived problems with PSB's hours, so long as the required process is followed.

### III. CONCLUSION

The court, sitting as a chancellor in equity, is to "weigh the competing considerations and mold appropriate relief." *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986). This court's review of the record shows that there is a strong likelihood that PSB will prevail on the merits, which supports granting a preliminary injunction. *Ty, Inc*, 237 F.3d at 895. The balance of irreparable harms favors PSB, and the public interest will not be harmed by the granting of an injunction.

PSB's motion for a preliminary injunction is granted. Clerk McIlvain is directed to issue an unrestricted Class B license to PSB.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 14, 2009